UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DONNA B. TALLEY,

      Petitioner,

                          Criminal No. 4:16cr21

v.

UNITED STATES OF AMERICA,

      Respondent.

## OPINION AND ORDER

This matter is before the Court on Donna B. Talley's ("Petitioner") "Motion to Vacate and Set Aside Sentence under 28 U.S.C. § 2255," filed with the assistance of counsel. ECF No. 158. The Government filed a brief in opposition to Petitioner's motion, ECF No. 176, and Petitioner filed a reply and subsequent motion for leave to supplement its briefing, ECF Nos. 177, 179. For the reasons set forth below, Petitioner's Motion for Leave to Supplement Legal Authority is **GRANTED**. However, Petitioner's § 2255 motion is **DENIED**.

### I.   FACTUAL AND PROCEDURAL HISTORY

On November 8, 2016, a jury found Petitioner guilty of eight counts of Acquiring or Obtaining a Controlled Substance by Misrepresentation, Fraud, Forgery or Subterfuge, in violation of 21 U.S.C. § 843(a)(3) and (d)(1); four counts of Possession with Intent to Distribute a Controlled Substance, in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(E); and two counts of Mail Fraud, in violation of 18 U.S.C. § 1341. ECF No. 74. On February 22, 2017, Petitioner was sentenced to sixty (60) months of imprisonment followed by three (3) years of supervised release. ECF No. 95. Petitioner filed a direct appeal on March 8, 2017, ECF No. 110, and her conviction was affirmed on April 24, 2019. ECF No. 135.

Following the Fourth Circuit's ruling, Petitioner began pursuing sentencing relief in this Court by filing a "Motion for Recommendation Regarding Length of RRC Placement and Home Confinement," ECF No. 140, which the Court dismissed without prejudice on October 4, 2019. ECF No. 142. Petitioner thereafter submitted a motion for reconsideration, ECF No. 143, which was similarly denied, ECF No. 144. Petitioner also filed multiple motions seeking jail-time credit. ECF Nos. 141, 145, 147. The Court dismissed these motions, and the Fourth Circuit later affirmed. ECF No. 155.

Petitioner then filed the instant motion to vacate her sentence pursuant to 28 U.S.C. § 2255 based on allegations that her trial and appellate counsel rendered ineffective assistance. ECF No. 158. After obtaining a briefing extension, the Government filed an opposition brief contending that Petitioner's § 2255 motion fails on substantive grounds. ECF No. 176. Petitioner filed a reply brief alleging that relief should be granted because

the Government's opposition brief does not contest the "critical points" made in her initial motion. ECF No. 177.

## II.  STANDARD OF REVIEW

A federal prisoner in custody may collaterally attack her sentence or conviction by moving the district court "to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief, a petitioner must prove her sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing[,] . . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

Petitioner may collaterally attack her sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). However, the existence of the right to pursue a collateral

3

attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

The "higher hurdle" applies because, once a petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 165-66. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that could have been raised on direct appeal unless a petitioner can show two things: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which [s]he complains." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). Alternatively, a Petitioner may overcome her default by demonstrating "actual innocence by clear and convincing evidence." Id.

A § 2255 petitioner need not overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective

4

assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance resulted in prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Conclusory statements are insufficient to carry a petitioner's burden. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (quotation marks and citation omitted).

Satisfying the first prong of Strickland requires a showing that counsel "made errors so serious that [they were] not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of

5

professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### III.   DISCUSSION

Petitioner's § 2255 motion advances ineffective assistance of counsel claims at both the trial and appellate levels. The Court has identified three distinct arguments: (1) failure to object to prejudicial or impermissible evidence and arguments during trial; (2) failure to protect Petitioner's Sixth Amendment right to counsel of her choice; and (3) failure to appeal the methods used to calculate Petitioner's sentence. ECF No. 158.

#### A.   Failure to Object at Trial and Sentencing

Petitioner first argues that her trial counsel was constitutionally deficient for failing to make several objections to evidence introduced at trial and sentencing, and that such failures resulted in a wrongful conviction and unjust sentence. For the reasons stated below, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice.

6

### 1. Failure to Object to Uncharged Orders of Hydrocodone

Petitioner was employed by Dr. Steven Becker's solo dental practice from 1979 until 2016.  During that time, she served as the office manager, responsible for filling all supply needs for the practice.  From 2002 to 2009, Dr. Becker's dental practice placed increasing amounts of hydrocodone orders from Henry Schein, Inc., a medical and dental supply distributor.  To purchase hydrocodone and other controlled substances from Henry Schein, Dr. Becker's office was required to have a DEA registration number. Henry Schein's representatives worked under the assumption that when purchases were made by a medical or dental practice, the holder of the DEA registration number authorized the order.  Henry Schein tracked the orders placed by Dr. Becker's office, and later provided the Government with relevant invoices during the Government's criminal investigation.

At Petitioner's trial, the Government sought to introduce the hydrocodone orders that were placed by Dr. Becker's office from 2002 to 2009.  Trial Tr. Vol. 2, 193:19-194:14, ECF No. 128.  These orders, which predate the offense conduct charged in this case, were introduced as business records.  Id. at 194:19-195:14. Defense counsel objected to the introduction of the 2002-2009 orders on relevance grounds, as they had been placed years before the 2011 orders that were the basis for Petitioner's charged conduct.  The uncharged hydrocodone orders were admitted over

7

objection, after the Government successfully argued that the increased ordering over time showed a link to the current alleged conduct of the same nature.

Petitioner first asserts that defense counsel failed to object on hearsay grounds to the introduction of the 2002-2009 uncharged orders. Petitioner claims that the uncharged orders contain a second level of hearsay that was being offered for its truth and does not fall within the business records exception or any other hearsay exception. She argues that "the challenged documents contained notations by sales representatives that the representatives had accepted the orders at the direction of someone they spoke to on the phone who stated her name was 'Donna.'" ECF No. 158, at 16. Furthermore, Petitioner claims the Government relied on these documents to establish (1) the notations on the invoices were statements made by "Donna," and (2) that Donna was the one who placed the orders in question. The Government contends that Petitioner's argument is without merit because defense counsel already challenged the legal basis for these records, and that the records were admitted over objection because they were relevant and material. However, the Government's brief does not address the double hearsay claims.

### a. Hearsay Challenge to the Notes within the Uncharged Henry Schein Orders

The trial records indicate, and the parties do not challenge, that the uncharged orders are hearsay.  That said, the orders may still be properly admitted, if they fall under an exception to the rule against hearsay.[1]  The facts before the Court support the position that the orders were properly admitted as business records under Rule 803(6) when Shaun Abreu, Verifications Department Manager of Henry Schein, testified to their authenticity as an "otherwise qualified witness" under the Rule.[2]

Still, the fact that the orders are admitted as legitimate business records does not end the admissibility analysis, as Petitioner argues that the notes within the orders constitute

---

[1] Rule 803(6), commonly known as the "business records exception," allows for the admission of a record when certain conditions are met: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.  Fed. R. Evid. 803(6).

[2] As mentioned, "the custodian or other qualified witness" may lay the foundation for the records' admission.  Fed. R. Evid. 803(6); see also United States v. Sofidiya, No. 97-4681, 165 F.3d 22 (Table), 1998 WL 743597, at *3 (4th Cir. 1998).  The term 'qualified witness' is interpreted broadly, only requiring someone with knowledge of the record keeping procedures. United States v. Bacas, 662 F. Supp. 2d 481, 487 (E.D. Va. 2009); see also Sofidiya, 1998 WL 743597, at *3.  This witness may lay the foundation for records, even if they do not have personal knowledge of the preparation of the records, but they must be familiar with the record keeping procedures of the business to establish the records' trustworthiness.

double hearsay without any legitimate exception.[3]    Importantly, when a party tries to introduce a record that contains hearsay within hearsay, any second-level hearsay statements are inadmissible unless a hearsay exception applies to each level. Fed. R. Evid. 805. "Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another record." United States v. Gwathney, 465 F.3d 1133, 1141 (10th Cir. 2006) (internal citation and quotation marks omitted), cert. denied, 550 U.S. 927 (2007).

According to Abreu's testimony, when Henry Schein sought the identity of the person placing the orders on behalf of Dr. Becker, "Donna" was the name given by the person on the other end of the phone line.  That person outside of Henry Schein supplied the tele-sales representative with the information used to fill out the invoice, including Dr. Becker's DEA number.    It follows that because such information was used to prove the truth of the matter asserted, that is, that Petitioner was the person who placed the hydrocodone orders, there is a hearsay within hearsay problem, and that information needs to be subject to an exception to be admissible.

---

[3] On June 23, 2022, Petitioner filed a Motion for Leave to Supplement Legal Authority, directing the Court to the recently decided Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc., No. 5:19-cv-21, 2022 U.S. Dist. LEXIS 33496, at *2 (W.D. Va. Feb. 25, 2022). The Court recognizes that this is a relevant case that aids in resolution of Petitioner's claims.   However, after reviewing the case, it does not alter this Court's conclusion.

Rule 801(d)(2)(A) provides that a statement is not hearsay if "the statement is offered against an opposing party" and "was made by [that] party in an individual or representative capacity." In other words, "a defendant's own statements constitute admissions by a party-opponent and [are] admissible pursuant to this rule." United States v. Benson, 957 F.3d 218, 229 (4th Cir. 2020) (internal quotations omitted). At the time the aforementioned statements were made to Henry Schein, Petitioner was employed at Dr. Becker's office, her primary job responsibilities included purchasing drugs from medical supply companies, and she was admittedly the sole agent in charge of placing such orders. These facts are sufficient to show that Petitioner was authorized to act in a representative capacity for Dr. Becker, and any inculpatory statements made in this capacity by Petitioner fall within the non-hearsay exception of Rule 801 and are therefore admissible.

Alternatively, the statements made to Henry Schein would also likely be admissible under Rule 807. Rule 807 is a narrow exception to the rule against hearsay, requiring that: (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts. Fed. R. Evid. 807(a).

Here, the highlighted statement's veracity is sufficiently reinforced considering the circumstances in which it was made. To start, the jury heard evidence that on August 18, 2011, during an unannounced visit from the Virginia Department of Health Professions and state police, Petitioner admitted that she was responsible for all of the practice's administrative duties, including ordering controlled substances. United States v. Talley, 767 Fed. Appx. 477, 480 (4th Cir. 2019). Petitioner also admitted to using Dr. Becker's DEA registration number to order increasing amounts of hydrocodone for personal use and to give to family members. Id.

Notably, the Fourth Circuit has held that "[w]hen the source of the information in the business record is an outsider . . . this information is excluded unless there is evidence that the business recipient had adequate verification of the information provided by the outsider." United States v. Turnbull, 213 F.3d 634 (4th Cir. 2000).[4] Petitioner makes the argument that, like in Turnbull, none of Henry Schein's employees took steps to verify

---

[4] In that case, the Court found that Western Union transaction records with the defendant's name on it were not sufficiently trustworthy to prove he laundered money because anyone could have used his name or telephone number to wire the money. Western Union failed to take adequate measures to ensure the accuracy of the information that was provided by customers on the money orders, since it did not verify the information completed by the sender unless the transaction was for more than $10,000. Due to this lack of verification, Western Union had no way of knowing who actually requested the money to be sent. Under those circumstances, the defendant's name on the records was not admissible for its truth.

12

that she was in fact the person placing the hydrocodone orders. However, in addition to her confession to Virginia state officials, the trial evidence established that Petitioner had unfettered access to Dr. Becker's DEA registration number—which is required to purchase hydrocodone from a licensed supplier of controlled substances—and such number was provided along with her name when the orders were placed.  Moreover, Petitioner was the sole agent of Dr. Becker's practice responsible for ordering dental supplies from companies such as Henry Schein, which further corroborated the trustworthiness of the name provided when orders were made.[5] Therefore, the Court finds that the uncharged orders—and the contents within—provide the clearest tangible record of the transactions between Petitioner and Henry Schein over the years. All things considered, the statement on the invoices referencing "Donna" as the purchaser of the uncharged hydrocodone orders appears to be supported by sufficient guarantees of trustworthiness and is more probative of identity than any other evidence the Government could obtain through reasonable efforts.

Even if the Court's above-analysis was faulty, to succeed on her § 2255 claim, Petitioner must demonstrate that counsel's failure to raise a double-hearsay challenge was so erroneous that it fell outside the "wide range of reasonable professional

---

[5] The trial evidence established that it was well-known that Petitioner had repeatedly placed these orders for many years, and there are no facts showing that those duties had been transferred to any other person.

assistance." Strickland, 466 U.S. at 689. Because, as demonstrated above, there are multiple viable legal arguments that would support admission, objecting on double-hearsay grounds was at best a questionable tactic, and therefore defense counsel was not constitutionally deficient for failing to do so. Moody v. Director, Va. Dep't of Corrections, No. 1:14cv1581 (GBL/TCB), 2016 WL 927184 at *13 (E.D. Va. March 3, 2016) ("[A] claim of ineffective assistance cannot rest on a failure to make a frivolous objection.")

### b. Petitioner's Shoulder Injury

Petitioner separately argues that counsel was constitutionally deficient by not utilizing available evidence to challenge the reliability of the Henry Schein records. That evidence includes medical records documenting Petitioner's medical examinations and treatment for a shoulder injury on July 27 and 31, as well as on August 25 and 27, 2008. The crux of Petitioner's § 2255 argument is that: (1) Petitioner was not sufficiently healthy to place the uncharged orders during this period; (2) Petitioner had no need to place illegal orders for hydrocodone at a time when she had a legal prescription; and (3) Petitioner had no way of picking up the illicit packages she allegedly ordered during this timeframe due to her injury.

"A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his

14

client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance." Reynoso v. Giurbino, 462 F.3d 1099, 1112 (9th Cir. 2006) (quoting Lord v. Wood, 184 F.3d 1083, 1093 (9th Cir. 1999)). The uncharged orders in question were placed on July 28 and August 5, 6, 19, 25, and 28, 2008. Notably, other than August 25, each of these days is different from the dates that Petitioner received treatment for her shoulder, and Petitioner has offered no alibi for her whereabouts on the days the orders were placed.[6] Petitioner also fails to demonstrate why her shoulder injury would prevent her from placing phone orders on the days she was in the office. Moreover, Petitioner presents no other evidence that rebuts the Government's assertion that she oversaw ordering during this timeframe. To the contrary, the jury heard evidence of Petitioner admitting to state officials that at all relevant times, Petitioner handled all of the practice's administrative duties, to include ordering controlled substances. Finally, even if Petitioner had a legal prescription for painkillers, as she argues, she has not shown why that fact would affect her established role of controlling all medical supply ordering. As presented, Petitioner's shoulder injury and the related medical

---

[6] On August 25, 2008, records show that Petitioner received an x-ray examination. However, Petitioner fails to demonstrate why that would impact her ability to go to work and place supply orders either before or after her doctor's appointment.

15

records do not impact the Court's confidence in the verdict rendered by the jury because it does not sufficiently undercut the substantial inculpatory evidence admitted at trial. For these reasons, counsel's decision, not to introduce Petitioner's medical records regarding her shoulder injuries, does not constitute deficient performance under Strickland, nor has Petitioner demonstrated prejudice.

### c. The Uncharged Darby Dental Orders

Petitioner argues that defense counsel was ineffective for failing to object on double-hearsay grounds to the admission of invoices and shipping documents for hydrocodone orders placed with Darby Dental, another medical supply company. The Government called Robyn Livingston, Director of Regulatory Affairs at Darby Dental, and Leodiac Thomas, a Loss Prevention Security Supervisor for UPS, to testify regarding these records which reflected four packages shipped to Dr. Becker's office in December 2010, with at least three of the shipments being signed for by "Byrd."[7] Petitioner asserts that the signatures constitute a second level of hearsay.

Similar to the notes on the Henry Schein orders, the Darby Dental invoices and shipping documents are admissible under Rule 807. For the reasons stated above, the totality of the

---

[7] "Byrd" is Petitioner's maiden name.

16

circumstances in which the packages were signed sufficiently guarantee the trustworthiness of the signatures. Likewise, the records are the most probative evidence to establish the identity of the individual who received the deliveries to Dr. Becker's office. As a result, a double-hearsay objection to the introduction of these records would have been unsuccessful, and thus Petitioner fails to establish constitutionally deficient performance.

### d. Improper Closing Argument

Petitioner argues that defense counsel's failure to object to the Government's introduction and subsequent use of uncharged ordering prejudiced her because the Government relied heavily on such evidence during summation. Federal Rule of Evidence 404(b) allows for the introduction of evidence of bad acts for noncharacter purposes, such as to prove "motive, opportunity, [or] intent." Fed. R. Evid. 404(b)(2). Moreover, Rule 404 is not violated when the uncharged bad act "concerns acts intrinsic to the alleged crime." United States v. Otuya, 720 F.3d 183, 188 (4th Cir. 2013). Such intrinsic evidence may involve "the same series of transactions as the charged offense," or "provide context relevant to the criminal charges." United States v. Basham, 561 F.3d 302, 306 (4th Cir. 2009) (internal quotation marks omitted).

On direct appeal, the Fourth Circuit addressed the issue of admission of the uncharged hydrocodone orders under Rule 404(b).

17

The Court held that "trial evidence supported the conclusion that [Petitioner] ordered hydrocodone without Dr. Becker's authorization for years, depicting a consistent pattern of behavior that provided context for the charged offenses." United States v. Talley, 767 F. App'x. 477, 486 (4th Cir. 2019). Put differently, the pre-2011 orders were intrinsic to the charged offenses because they were part of the "same series of transactions," and would have been admissible under Rule 404(b), rendering any potential objection moot. Id.; Basham, 561 F.3d at 326. For this reason, counsel was not constitutionally deficient in failing to object to the admissibility of the uncharged orders.

Furthermore, the Fourth Circuit also determined that any risk of unfair prejudice stemming from the admission of the 2002-2009 orders was mitigated by a limiting instruction this Court gave to the jury:

"We have previously recognized that a limiting instruction concerning how the jury could consider such evidence eliminates the risk of unfair prejudice in all but the most extreme cases. See United States v. Hall, 858 F.3d 254, 279 (4th Cir. 2017). Here, the district court gave a limiting instruction that the pre-2011 hydrocodone orders were not evidence of the charged conduct, but were admitted solely to provide context for other evidence. Under these circumstances, admission of the practice's pre-2011 hydrocodone orders did not constitute plain error."

767 F. App'x. at 487; ECF No. 134, at 15. As the Court of Appeals notes, the limiting instruction that this Court gave did not permit the jury to use the uncharged orders for anything other than establishing context for other evidence. After further review of

18

the record, the Court concludes that Petitioner has failed to identify any unfair prejudice from admission of the documents. Consequently, she has failed to establish prejudice as required by Strickland's second prong.

## 2. Failure to Object to Evidence Relating to Charged Orders and Failure to Make Critical Arguments Regarding that Evidence

Next, Petitioner claims that invoices from Darby Dental—a hydrocodone supplier—did not identify the individual who placed the charged hydrocodone orders, and defense counsel should have advanced a hearsay objection. Petitioner separately maintains that because none of these orders conclusively establish that she was the person who placed them, counsel should have argued that point more forcefully to the jury through challenging the "possession" element of the drug offenses charged in Counts 10-13.

As for counsel's failure to advance a hearsay objection, Petitioner appears to be making a related argument to those squarely addressed in Part III.A.1. Therefore, for the reasons stated above, Petitioner fails to establish deficient performance or prejudice.

Regarding counsel's failure to challenge the evidence of "possession," there is a wide degree of deference granted to defense counsel with regards to what trial strategy to employ. "[T]he reasonableness of a lawyer's trial performance must be

19

'evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential.'" United States v. Roane, 378 F. 3d 382, 404-05 (4th Cir. 2004) (quoting Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

Here, counsel elected to challenge Counts 10-13 by emphasizing the lack of evidence on the distribution element, electing not to separately challenge the possession element. Trial Tr. Vol. 5, 1011-1018, ECF No. 123. Counsel's decision is supported by the fact that: (1) there was trial evidence suggesting that Petitioner repeatedly possessed hydrocodone while acting as the office manager; (2) there was evidence that Petitioner admitted that she was solely responsible for ordering the hydrocodone for the office; and (3) there was evidence reasonably suggesting that she repeatedly signed for and accepted hydrocodone shipments from Henry Schein and Darby Dental.[8]  Even now, Petitioner does not point to any evidence suggesting that she did not possess the drugs in question or any non-speculative evidence that there was another office employee who possessed the hydrocodone. Petitioner likewise offers no explanation as to why the deliveries for hydrocodone were signed in her name if someone else was accepting them, and there is no alternative explanation in the record as to

---

[8]  Petitioner argues that the "Byrd" signatures on the packages were not shown to the jury, however, she makes no claim that such signatures are inconsistent with her own handwriting.

what happened to the excess hydrocodone after it was delivered to Dr. Becker's office.

Petitioner therefore fails to demonstrate that it was unreasonable for defense counsel to forgo a challenge to the possession element in the face of strong inculpatory evidence. To the contrary, even in hindsight, counsel's decision to focus on a different element of the charges appears entirely reasonable because any argument contending that Petitioner did not possess the drugs at issue may have seemed deceptive and could have caused the jury to question the credibility of the defense. The reasonableness of counsel's strategy is further illustrated by the fact that the alternatives Petitioner now puts forth, even at this late stage of the proceedings, are weak, conclusory, and unsupported by fact. To label defense counsel's performance as deficient based on this record would improperly fault counsel "for raising stronger rather than weaker claims." United States v. Mason, 774 F.3d 824, 829 (4th Cir. 2014). In sum, Petitioner fails to demonstrate that counsel's strategic decision was deficient in any way, let alone deficient to a degree of constitutional magnitude.

The Court need not address the prejudice prong because Petitioner has failed to prove that performance was objectively unreasonable.

### 3. Failure to Object to the Government's Impermissible Arguments about Embezzlement

Petitioner next claims that defense counsel was deficient for failing to object to impermissible arguments made by the Government regarding uncharged embezzlement Petitioner had allegedly committed. At trial, the Government questioned Jennifer Brown, a former accountant with Virginia State Police, about checks made from Dr. Becker's practice to Petitioner and her husband. Trial Tr. Vol. 3, 414-23, 451-54, ECF No. 125. On redirect, the Government asked about additional transactions from the practice to Petitioner and her husband that Brown had not testified to on direct examination. Over defense counsel's objection, the testimony was allowed, as the Court ruled that defense counsel's cross examination had opened the door to the Government's line of questioning. Id. at 451:14-452:6. The evidence and corroborating testimony was admitted for the Government to ostensibly show that Petitioner had "control" over the office's affairs and to show her unexplained sources of cash, and the Government was not permitted to use such evidence in an effort to prove embezzlement.[9] However, Petitioner argues that, with the following statements, the Government referenced this evidence during its closing argument in

---

[9] In light of the Government's prior representation that the checks were not being introduced to show embezzlement, this Court stated that it would consider a limiting instruction if defense counsel asked for it. Trial Tr. Vol. 3, 452:22-454:22, ECF No. 125. However, no such instruction was requested—perhaps because such an instruction would only further call attention to the issue.

a manner suggesting that Petitioner had stolen money from the

practice:

Ladies and gentlemen, only someone with this much control who had concealed matters prior could accomplish this long-running fraud. Ladies and gentlemen, those checks, over 140 checks to Donna Talley in 2011, clearly, she was working a good deal for Dr. Becker in this time period.   There's over 80 checks to Robert Talley in the amounts of some $30,000.   Now, only someone who paid her husband that much in 2011 and over 100,000 previously, and effectively concealed that from Dr. Becker, could do something like this.

Trial Tr. Vol. 5, 982:14-20.   Defense counsel did not object to

the Government's remarks and offers no explanation for why she

chose not to.

Though it is well-established that evidence of past crime or

wrong is not admissible to prove a person's character to show later

action in conformity to that character, United States v. Askew,

666 F. App'x. 316, 320 (4th Cir. 2016), it is not clear from the

record that the Government's closing statements violated such

principle.   Importantly, the checks that the Government referenced

are a strong indicator of Petitioner's control over the extensive

drug-ordering operation occurring without Dr. Becker's apparent

knowledge.   Petitioner stood trial for nine counts of knowingly or

intentionally     acquiring     controlled     substances     through

misrepresentation, fraud, forgery, deception, or subterfuge.   See

21  U.S.C.  §  843(a)(3).    It  was  therefore  reasonable  for  the

Government to reference the checks to argue that Petitioner had

unfettered discretion to allocate the practice's funds as she saw

fit, namely, to purchase ever-increasing amounts of hydrocodone by medical suppliers for personal use and for illicit distribution. Moreover, the Government had the burden of proving beyond a reasonable doubt that Petitioner misrepresented to the medical suppliers that she had a legitimate purpose for purchasing hydrocodone, and then that she used the supplier's reliance on that misinformation to obtain the drugs. A jury may be inclined to believe that Petitioner's access to Dr. Becker's DEA number and bank accounts made that possible based on her complete control over such accounts in the past. As a result, Petitioner fails to demonstrate that the Government's arguments were "improper," thus also failing to demonstrate that an objection was necessary to render effective assistance.

Additionally, because the Government's closing argument was not clearly improper, defense counsel's decision not to object (or alternatively, move for a limiting instruction) was reasonable "for a variety of tactical reasons, including because jurors get irritated by objections and because defense counsel may not want to call attention to comments about which he wants the jury to forget." Brown v. Clark, No. 7:21cv302, slip op. at 18 (W.D. Va. May 11, 2022); see Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989) (acknowledging that trial attorneys "routinely" are called upon to make judgments about whether an objection would unduly emphasize a prejudicial matter). Because it was plainly reasonable

for defense counsel to avoid drawing the jury's focus to Petitioner's control over this extensive operation, electing not to make an objection here was well within counsel's strategic discretion and does not fall outside the wide range of constitutionally acceptable conduct.[10]

Petitioner separately fails to demonstrate <u>Strickland</u> prejudice, as the Court would have allowed the Government's comments about Petitioner's control over the aforementioned financial transactions had an objection been made. In other words, the failure to object to the Government's closing statements does not undermine confidence in the outcome because any such objection would have been overruled.[11]

### 4.    Counsel Failed to Object to Improper Government Arguments Regarding Petitioner's Defense

Similar to the claim addressed immediately above, Petitioner argues that her defense counsel failed to object to improper cross-examination and closing arguments, which "allowed the government

---

[10] Relatedly, counsel's choice not to move for a mistrial was reasonable. To be clear, it is for counsel—not a defendant—to decide whether to seek a mistrial.   <u>United States v. Chapman</u>, 593 F.3d 365, 367-68 (4th Cir. 2010) ("We likewise conclude that decisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client. . . . [D]eciding whether to seek a mistrial involves an on-the-fly balancing of the probable damage caused by the trial error against the likelihood that a different jury might be more inclined to acquit.")   Here, Petitioner provides little support for her claim that moving for a mistrial was so necessary that the failure to do so would fall below an objective standard of reasonableness. The peripheral nature of the comments at issue combined with the quantity of incriminating evidence presented by the Government at trial would have made such a motion futile.

[11] Likewise, a motion for a mistrial would have been denied.

to undercut [Petitioner's] defense in an impermissible and prejudicial manner." ECF No. 158, at 34. At trial, through cross-examination of Dr. Becker, Petitioner presented documentary evidence that a part-time staffer named Sherri Cottingham was working in the office on the days of the charged conduct. This information was presented by the defense to cast doubt on whether Petitioner played a role in placing the charged orders.

In an attempt to discredit Petitioner's documentary evidence during the re-direct examination of Dr. Becker, the Government asked what appear to be leading and argumentative questions regarding Cottingham. These questions revolved around Cottingham's presence in the office on the days that supply orders were placed and Cottingham's unavailability for trial due to her death. The Government later argued that the combination of these two facts allowed Petitioner to transfer fault to Cottingham during the trial without Cottingham having an opportunity to respond to such allegations. Trial Tr. Vol. 4, 644:6-21.

While the Government's line of questioning during Dr. Becker's re-direct examination could have supported an objection for improperly leading the witness, Petitioner fails to demonstrate that the decision not to object was anything other than sound trial strategy. "Decisions about when to object to questions—particularly on grounds of form—are strategic and, thus, absent extraordinary circumstances not present here, failures to

object are not evidence of objectively unreasonable representation." United States v. Donaldson, 577 F. App'x. 63, 66–67 (2d Cir. 2014). Moreover, Petitioner fails to "pinpoint any exact evidence which could have been excluded had h[er] counsel objected" to the leading questions. United States v. Nguyen, 379 F. App'x. 177, 181 (3d Cir. 2010). To the contrary, the line of questioning at issue was used to demonstrate the simple point that, in the Government's view, Petitioner selected Cottingham as a scapegoat due to her unavailability to testify to refute the allegations, and nothing in the record suggests that the Government would have been unable to make that same point had it rephrased its questions.

Because Petitioner fails to demonstrate that the failure to object to the form of the Government's questions rose to the level of a constitutional violation, and separately fails to demonstrate that an objection would have been reasonably likely to prevent the Government from eliciting substantially the same testimony, or reasonably likely to change the outcome of the case, her § 2255 claim fails to satisfy either prong of Strickland. Petitioner's failure to demonstrate prejudice is further illustrated by the fact that Petitioner offered weak alternatives as to why Cottingham, a part-time worker, and not Petitioner, would have been ordering narcotics for the practice when doing so was one of Petitioner's primary job responsibilities.

Relatedly, the Government contended during summation that Petitioner's alibi and attempt to shift blame to Cottingham was based on defense exhibits of the practice's ledger and internal calendar that Petitioner assembled in preparation for trial. Petitioner now claims that counsel should have objected to these arguments because they were "made without substantiation." Pet'r Br. at 40. However, counsel states in her § 2255 affidavit that she did not object to the Government's argument that Petitioner compiled the defense exhibits because: (1) Petitioner did in fact compile them; and (2) counsel had no evidence to present to the contrary. Id. at 3-4 ("If the Court had questioned me as to how they were compiled, I would have, of course, responded that Ms. Talley had compiled them, in accordance with my ethical duty of candor toward the tribunal."). Petitioner does not challenge counsel's factual claims through a counter-affidavit.

Furthermore, the evidence presented at trial at a minimum plausibly supports the contention that Petitioner compiled the documents for her defense exhibits. Dr. Becker testified that he had no role in putting together the exhibits and assumed that Petitioner had compiled them. Trial Tr. 640:8-12. Although Petitioner claims that the Government's comments on this issue were unsubstantiated, Dr. Becker's testimony taken in tandem with Petitioner's ongoing access to the practice's records provide no reasonable basis for an objection to this point. Consequently,

Petitioner again fails to establish either deficient performance or prejudice.

### 5. Counsel Did Not Object to Improper Evidence Used at Sentencing

Petitioner's final argument, grounded in defense counsel's failure to raise an objection at the trial level, asserts that counsel was deficient for failing to object to "unreliable and improper evidence [used] to calculate [Petitioner's] sentencing guidelines." Pet'r Br. 34. At sentencing, Petitioner was attributed with over 100,000 units of hydrocodone that were not associated with the transactions charged in the indictment. Petitioner argues that defense counsel should have challenged the attribution of such drug weights at sentencing because they are not relevant to her offenses of conviction.

Section 1B1.3(a)(2) of the Sentencing Guidelines, known as the "relevant conduct" section, provides as follows: "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions. . . that were part of the same course of conduct or common scheme or plan as the offense of conviction [may be considered together.]" As § 841 drug crimes are "of a character for which § 3D1.2(d) would require grouping of multiple counts," the Fourth Circuit has made clear that this "same course of conduct" provision applies in drug trafficking cases; it also applies in many financial fraud cases.

29

See United States v. Ellis, 975 F.2d 1061, 1067 (4th Cir. 1992) (upholding a sentence based on the larger amount of cocaine that was foreseeably involved in the conspiracy even though the defendant pled guilty to possession with intent to distribute a lesser amount); United States v. Watford, 894 F.2d 665, 668-670 (4th Cir. 1990) (upholding a sentence based on entire amount of money taken in fraudulent scheme, which was many times in excess of the amount charged).

Here, over 106,000 units of hydrocodone, mostly uncharged, were reliably attributed to Petitioner.  See United States v. Wilson, 896 F.2d 856, 858 (4th Cir. 1990) (explaining that, at sentencing, a district court may consider any reliable evidence for the purpose of calculating an advisory Guideline range, including evidence that would not be admissible at trial).  As mentioned above in Part III.A.1, the Government presented evidence of Petitioner admitting to Virginia state officials that she had complete control of the practice's supply ordering.  The orders that she was charged with marked the end point of a long line of similar transactions over the course of a decade.  Petitioner placed these orders as part of the same overarching scheme to procure hydrocodone through her employer. The Court was therefore well within its discretion to use the uncharged drug quantities in determining Petitioner's advisory Guideline range.

As a result, Petitioner's trial counsel was not constitutionally deficient for concluding that the Court would consider the uncharged drug quantities to be "relevant conduct" under a preponderance of the evidence standard. Based on the above-mentioned precedent and the facts before the Court, a relevant conduct objection would have been unlikely to succeed, and therefore, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice.

### B. Trial Counsel Failed to Protect Petitioner's Sixth Amendment Right to Counsel

The Sixth Amendment provides that in criminal prosecutions, "the accused shall enjoy the right . . . to have Assistance of Counsel for his defence." U.S. Const. Amend. VI. Additionally, it commands that "a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006); see United States v. Basham, 561 F.3d 302, 324-25 (4th Cir. 2009) (clarifying that while an indigent criminal defendant only has the constitutional right to the effective assistance of counsel, a defendant with means to hire an attorney has the additional constitutional right to counsel of her own choosing). In the instant case, Petitioner asserts that her trial counsel failed to protect her constitutional right to counsel of her choice

31

by failing to take action that would facilitate Petitioner's retention of a private lawyer.

Though the right to counsel of choice is protected by the Constitution, the right is "circumscribed in several important respects." Wheat v. United States, 486 U.S. 153, 159 (1988). Applicable here, the Supreme Court has recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at 152.

Petitioner applied for court-appointed counsel at her initial appearance on February 26, 2016. ECF No. 8. The Magistrate Judge provisionally appointed counsel from the Office of the Federal Public Defender. Upon review of Petitioner's financial circumstances, the Court then determined that Petitioner was ineligible for Court-appointed counsel and ordered her to contact at least ten attorneys to secure private representation. Petitioner challenged such finding, arguing that she would not be able to afford private counsel unless she refinanced her home. Notwithstanding such argument, the Court determined that Petitioner maintained significant assets, and expressed concern that she may not qualify for court-appointed assistance. On March 28, 2016, Petitioner filed a report outlining the attorneys she contacted and their rates. ECF No. 16. The Court decided not to terminate the court-appointed representation at that time, instead

allowing Petitioner the opportunity to either hire private counsel or demonstrate to the Court why she could not do so.

In the two months that followed, Petitioner did not hire outside counsel and failed to show the Court why she was not able to do so. The Court then found that Petitioner had sufficient resources to cover appointed attorneys' fees at $1,000 per month. ECF No. 17. Shortly thereafter, Petitioner conveyed to the Court that she was in the process of securing financing to retain new counsel. Petitioner was ordered to report the results of her financing efforts no later than April 30, 2016, as her trial date was approaching, and the Court did not want to impede her efforts in preparing her defense. Id. On April 28, 2016, Petitioner requested a continuance for three reasons: (1) her employment made it difficult to follow up on financing and meet with counsel; (2) additional time was needed to go through voluminous discovery; and (3) there was a need for continued plea discussions with the Government. ECF No. 23. The Court granted a continuance on May 2, 2016. ECF No. 26. On May 25, 2016, Petitioner's trial was rescheduled for September 27, 2016.

On June 21, 2016, the Magistrate Judge assigned to this case held a hearing regarding Petitioner's continued qualification for appointed counsel. ECF No. 28. The Court expressed further doubt regarding Petitioner's financial circumstances and ordered Petitioner to continue reporting on her efforts to obtain outside

counsel. The Court was cognizant of the impending trial and reminded Petitioner's court-appointed lawyers that they had not been relieved of their representation. Id.

On August 8, 2016, a plea hearing was scheduled because Petitioner had planned to plead guilty, however, Petitioner subsequently changed her mind and rejected the Government's plea offer. In order to give both sides ample time to prepare for trial, the Government moved to continue the trial date, ECF No. 33, and a new date was set for November 1, 2016.

In the interim, on August 24, 2016, the Magistrate Judge ordered Petitioner to file another financial status report, and Petitioner informed the Court that even after refinancing her home, she was financially incapable of retaining private counsel or reimbursing court-appointed counsel. The Magistrate Judge then issued a show cause order to determine why Petitioner's monthly payments should not be increased and why she should not be held in contempt for failing to use her improved financial status to retain private counsel and for failing to "timely notify the Court of these developments." ECF No. 39.

On September 1, 2016, a hearing was held at which Petitioner argued that any perceived improvements to her financial status were misleading, and that she restructured her debt with her bank to lower her credit card balances. Though the Court concluded that Petitioner should have been able to hire and pay an attorney

34

in the months prior to the hearing, the Court noted that with her trial date approximately 60 days away, Petitioner would not be best served by being forced to find retained representation. See ECF No. 41, at 4 ("[G]iven the pending trial date of November 1, 2016, and the fact that this case has already been continued twice, requiring Defendant to secure private counsel at this juncture would most likely require another continuance of the trial date."). The Court permitted Petitioner to keep her court-appointed counsel, which she did for the duration of her trial. Petitioner offered no objection to that ruling, and in fact, she never successfully secured private counsel after many opportunities to do so.

On appeal, Petitioner alleged that the Court violated her Sixth Amendment right to counsel by denying her a continuance to obtain private counsel, and by requiring reimbursement payments for court-appointed counsel. The Fourth Circuit held that "[g]iven that Talley never pursued a continuance or sought to substitute private counsel, her claim on appeal that she was denied the right of counsel of choice is meritless and not based on the record." United States v. Talley, 767 Fed. Appx. at 484 (4th Cir. 2019). The Fourth Circuit further explained that "at no time did the Magistrate Judge say anything to suggest that Talley lacked the right to pursue or retain private counsel. And at no time did the

district court deny a continuance in order for Talley to do so."
Id.

Petitioner now claims that due to the actions of the
Magistrate Judge, "defense counsel did not make an application for
continuance" or take any other action to facilitate her retention
of a private lawyer, and because of this, counsel failed to protect
Petitioner's Sixth Amendment right to counsel of her choice.
However, as the Fourth Circuit found, the Magistrate Judge took no
action restraining Petitioner from seeking private counsel, and
there are no facts indicating that Petitioner was not fully aware
of her ability to do so.  For months, the Magistrate Judge
considered compelling Petitioner to retain private counsel of her
choice, and for that entire period, Petitioner pleaded with the
Court to allow her to retain court-appointed counsel.  Furthermore,
because Petitioner repeatedly opposed the Court-encouraged efforts
to hire her own attorney, her appointed counsel had no basis to
protect an unasserted constitutional right and was only required
to dutifully represent Petitioner.  Therefore, the facts before
the Court cut against any suggestion that Petitioner's appointed
counsel or the Magistrate Judge blocked her constitutional right
to hire her own attorney.  Indeed, the record is clear that
Petitioner repeatedly exercised the right to counsel of her choice
by electing to keep court-appointed counsel, and for these reasons,
the Court cannot find that Petitioner was denied such right.  Thus,

36

Petitioner fails to show that she suffered any Sixth Amendment violation.

## C. Appellate Counsel Failed to Appeal The Guidelines Manual Applied at Sentencing

### 1. Procedural History

Petitioner argues that appellate counsel was constitutionally ineffective by failing to appeal the Court's erroneous use of the 2010 Sentencing Guidelines Manual instead of the 2016 Guidelines Manual during her sentencing. Petitioner was sentenced on February 22, 2017, after being found guilty of eight counts of illegal possession of Schedule III hydrocodone, four counts of possession with intent to distribute a Schedule III narcotic, and two counts of mail fraud. The presentence report (PSR) calculated Petitioner's advisory sentencing guideline range as 78-97 months incarceration. To calculate Petitioner's range, the Probation Office used the 2010 Guidelines Manual and identified hydrocodone under the Schedule III heading. Petitioner was attributed with 106,000 units of "Schedule III substances," ECF No. 101 at 10, and such a classification gave Petitioner a base offense level of 26. A 2-level enhancement was added for abuse of a position of trust, and Petitioner's total offense level was calculated to be 28.

At sentencing, counsel objected to the Probation Office's use of the 2010 Guideline Manual, and instead argued for use of the 2016 Guidelines with the continued treatment of hydrocodone as a

Schedule III controlled substance. Of relevance, the 2016 Guidelines provide for a maximum offense level of 20 in cases involving 60,000 or more converted units of a Schedule III substance. Thus, because Petitioner was attributed with well over 60,000 units, counsel argued that the applicable base offense level should have been 20, and that with the abuse of trust enhancement, the total offense level should have been 22.

In response, the Government argued that the Probation Office's use of the 2010 Guidelines was correct, because: (1) the 2010 Guidelines contain an explicit classification of hydrocodone as a Schedule III drug; (2) the 2016 Guidelines do not contain an explicit classification of hydrocodone as a Schedule III drug, and instead only explicitly list hydrocodone within the Schedule II category;[12] (3) usage of the 2016 Guidelines with the Schedule II classification of hydrocodone would have given Petitioner a much higher sentencing range; and (4) using the Schedule III categorization from the 2010 Guideline manual in conjunction with the Schedule III base offense levels from the 2016 Guideline manual would violate the "one book" rule. See §1B1.11(b)(2). The Court agreed with the Government's reasoning and overruled Defendant's objection, specifically referencing the fact that Petitioner's proposed calculation would violate the "one book rule," which

---

[12] Importantly, in the 2016 Guidelines, hydrocodone is listed as a Schedule II controlled substance, reflecting a 2014 reclassification by the FDA. See 21 C.F.R. § 1308.

38

precludes the Court from mixing and matching provisions from various manuals. Sentencing Tr. Vol 1. 65:10-15. Then, when imposing sentence, the Court elected to vary downward from the minimum sentence recommended by the Guidelines, and Petitioner was sentenced to 60 months incarceration.

## 2. Analysis

Petitioner now argues that appellate counsel was ineffective for failing to appeal this Court's interpretation of the one book rule. In support, she claims that there was never in fact a "one book" question, and that the drug schedule at issue did not require a reference to the 2010 Guidelines because the Code of Federal Regulations is the proper source for determining the status of a controlled substance. As a result, Petitioner asserts that the 2016 Guidelines—without reference to the 2010 Guidelines—should have been applied to calculate Petitioner's offense level, and she maintains that appellate counsel's failure to appeal that issue prejudiced her by subjecting her to a higher Guidelines range.

Section 1B1.11(a) of the 2016 Sentencing Guidelines provides that the sentencing court "shall use the Guidelines Manual in effect on the date that the defendant is sentenced." The next subsection provides an exception to that rule, indicating that if "the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in

effect on the date that the offense of conviction was committed."
U.S.S.G. § 1B1.11(b)(1).  The Supreme Court has recognized that an
ex post facto violation occurs when a defendant is sentenced under
Guidelines promulgated after she commits criminal acts and the new
Guidelines provide a higher applicable sentencing range than the
manual in place at the time of the offense.   Peugh v. United
States, 133 S. Ct. 2072, 2078 (2013).

Here, Petitioner's last charged offense took place in August
2011, and at that time: (1) hydrocodone was a Schedule III
controlled substance; and (2) the 2010 Guidelines were in place
and accounted for this classification.   In October 2014, three
years after the completion of Petitioner's criminal conduct, the
FDA reclassified hydrocodone as a Schedule II controlled
substance.   Although Petitioner was not charged until 2016, she
was convicted of possessing and distributing a Schedule III
substance because the last charged act took place before the FDA
reclassification.   As the Government noted in its sentencing
position paper, had Petitioner been sentenced under the 2016
Guidelines using the "Schedule II hydrocodone" label to calculate
her offense level, a higher applicable sentencing range would have
resulted.[13]  To avoid a clear violation of the ex post facto clause

---

[13] This is compared to use of the 2010 Guidelines.

of the Constitution, the 2010 Guidelines Manual and Schedule III classification were applied.

Despite this beneficial treatment, Petitioner continues to maintain that she should receive the even more beneficial Schedule III classification coupled with the 2016 Guideline manual's punishment for Schedule III drugs (even though hydrocodone was not a Schedule III drug at the time the Guidelines were amended). At this stage in the proceedings, this Court does not directly revisit whether Petitioner's calculation was proper, as that issue was fully litigated at sentencing. Rather, the question is whether it was objectively unreasonable for appellate counsel to elect not to raise this same challenge on appeal.

It is well-established that appellate counsel is not legally required to assert every nonfrivolous issue on appeal. Jones v. Barnes, 463 U.S. 745 (1983). This is true even if the attorney fails to raise issues expressly requested by the defendant. Id. Raising several issues on appeal is potentially more detrimental to a defendant's chances of success than raising a small number. Notably, there are page limits for briefs and time constraints on oral arguments, and advocates must focus on the strongest arguments to enhance their chances of success. Id. at 751-61. As a general matter, "only when ignored issues are clearly stronger than those presented" should a district court find ineffective assistance for failure to pursue claims on appeal. United States v. Mason, 774

F.3d 824, 829 (4th Cir. 2014) (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)) (internal quotation marks omitted). Furthermore, "[a] lawyer's performance is entitled to a strong presumption of reasonableness." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993); Evans, 881 F.2d at 124. When determining issues to raise on appeal, counsel is entitled to a presumption that they decided which issues were the most likely to afford relief. Pruett, 996 F.2d at 1568. This decision is entitled to the same presumption that protects trial strategy. Id.

Here, appellate counsel elected to focus on Petitioner's Sixth Amendment right to counsel of her choice, whether this Court abused its discretion in allowing the Government to introduce certain evidence, and numerous other evidentiary issues. Surely, he was aware of the matters litigated at trial and sentencing, and from that, he decided which points to appeal. Importantly, Petitioner offers no argument demonstrating that her Guidelines claim is stronger than any of the claims that appellate counsel chose to advance. Moreover, Petitioner's understanding of the Guidelines is not rooted in established law, and she provides no examples of any other district court using her above-stated application of §1B1.11 to achieve the lowest possible sentencing range. For these reasons, Petitioner fails to demonstrate that appellate counsel was constitutionally deficient for electing not to raise a novel sentencing argument unsupported by any controlling

or persuasive precedent.   See United States v. Morris, 917 F.3d 818, 823 (4th Cir. 2019) ("A lawyer does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent."); see also United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) ("We have consistently made clear that we do not penalize attorneys for failing to bring novel or long-shot contentions.").[14]   Because Petitioner fails to demonstrate that counsel performed at a constitutionally deficient level, her ineffective assistance claim fails without the need for this Court to address prejudice.

### D. The Cumulative Effect of Counsels' Failures Establishes Prejudice

Finally, Petitioner asserts that the cumulative effect of Counsels' failures establishes prejudice. However, Petitioner fails to establish constitutionally deficient performance or prejudice in any of her prior claims.   As a result, Petitioner cannot demonstrate that she suffered cumulative prejudice because of her trial or appellate counsel's actions.

---

[14]   In some circumstances, counsel may be constitutionally required to make arguments "even in the absence of decisive precedent," to include situations where "there is relevant authority strongly suggesting" that the Guidelines were miscalculated.   United States v. Cawthorne, 878 F.3d 458, 465-66 (4th Cir. 2017).   However, as noted above, the constraints put on appellate attorneys force them to advance only the strongest arguments, even when other colorable arguments could have been raised.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Motion for Leave to Supplement Legal Authority is **GRANTED,** and Petitioner's § 2255 motion is **DENIED.** Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability is **DENIED.** 28 U.S.C. § 2253(c); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, she may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. Rule App. Proc. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, she must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner's current counsel, Petitioner's former counsel, and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Newport News, Virginia
July ___ , 2022